## In re CHRIST'S CHURCH OF THE GOLDEN RULE.

### No. 11735.

Circuit Court of Appeals, Ninth Circuit.

Feb. 18, 1948.

Frank C. Weller, Thomas S. Tobin, and Martin Gendel, all of Los Angeles, Cal., for appellant.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order recommitting to the referee in bankruptcy the consideration and determination of the petition of appellant trustees for the authorization of their appointment of the appellants Weller, Tobin and Gendel as the trustees' attorneys in the administration of their trust estate. That it is a diverse and complicated administration, needing the employment of several attorneys in the "best interests of the estate," appears from the finding of the referee in the instant 'case that "I find that the bankrupt corporation was a far flung organization having assets said to be worth some three million dollars and owning and operating various and sundry enterprises in California and Oregon. * * *"

Appellant trustees petitioned the referee on January 11, 1946, over two years ago, for the authorization to appoint the three above attorneys and one Walker. It appears that the trustees' choice was of attorneys experienced in bankruptcy litigation. Without notice or hearing, the referee ordered a confirmation of the appointment of Walker and denied the petition as to the other three attorneys. On January 24, 1946, the trustees sought review by the district court which was heard on February 20, 1946. The order affirming the referee's order was made on May 13, 1946, nearly three months later. The present appellants appealed from that order and we reversed. In re Christ's Church of the Golden Rule, 9 Cir., 157 F.2d 910.

In reversing we held of the trustees' petition of January 11, 1946, at page 911 of 157 F.2d:

"An inspection of the trustees' verified petition shows that it stated the complicated character of the trustees' anticipated litigation, creating a special need of counsel for the successful discharge of the trustee obligation. Every requirement of General Order 44 [11 U.S.C.A. following section 53] is fully satisfied by the allegations of the petition. As was stated by the Second Circuit with reference to General Order 44 in the Matter of Mandell, 2 Cir., 69 F.2d 830, 831,

" 'Only in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel, and the reasons which make it for the best interest of the estate to have the court select the attorney over the trustee's objections should appear in the record.'

"The Fourth Circuit in Kanter v. Robertson et al., 102 F.2d 92, 93, stated of the

relations between the trustee and his attorney:

"'* * * Ordinarily the choice of an attorney for the Trustee rests with the trustee subject to the approval or disapproval of the referee or judge, and the choice of the trustee should be confirmed unless good reasons appear to the contrary.'"

We further held that the referee and district court erred in deciding the petition of January 11, 1946 without a hearing and "remanded for a hearing on the merits of the petition for the employment of the attorneys."

On December 10, 1946 the trustees petitioned the referee for our ordered hearing on the petition of January 11, 1946. Hearing was had, testimony taken, and on February 12, 1947, the referee made his findings of fact and conclusions of law and entered an order denying the petition.

On February 19, 1947, appellants petitioned the district court for review of the referee's order which was heard over a month later on March 24, 1947. No evidence was there adduced. On July 11, 1947, over three months later, the district court set aside the referee's order and ordered a rehearing.

Appellants contend that this order was improvidently made and was error in that the findings of fact on our ordered hearing require the petition of the trustees be granted. With this contention we agree.

As is stated in Blue v. Herkmier National Bank, 2 Cir., 30 F.2d 256, 260, at page 260: "Of all classes of cases pending in the courts, bankruptcy proceedings are the last which should be delayed. To do so is a great injustice to creditors. Such delays foster just criticism and bring disrespect for the administration of justice."

For two years the trustees have been without the attorneys of their choice in the complicated and diverse administration of the trust estate consisting of many valuable assets, scattered over two states. Yet the district court in remanding ordered the referee to determine (1) whether the petition of January 11, 1946 is still urged by the trustees—though they sought its hearing pursuant to our remand, and one of them participated therein and all three trustees petitioned the district court for its review; (2) whether the petition of January 11, 1946 complied with General Order 44—though we held in our reversing opinion, supra, that it satisfied every requirement of Order 44; (3) whether the trustees agreed to employ any of the appellant attorneys prior to their voting the claims of creditors representing them upon the election of the trustees, a matter entirely irrelevant to the sole question of the competence of the attorneys to act for the trustees in the "best interest of the estate"; (4) whether any of the creditors represented by the requested attorneys previously had been represented by them, also entirely irrelevant; (5) whether the bankrupt corporation is the alter ego of one Arthur H. Bell, again an irrelevant and time consuming determination.

Whether these matters would be relevant to the appointment or continuance in office of the attorneys is a matter not before the referee, who does not question their competence. On the contrary his order provided for "the right of the trustees to employ *other* counsel of their own selection."

It is obvious that the trustees would be deprived of the needed attorneys of their choice for further months before these irrelevant issues are decided.

We think the findings of the referee show that this is not one of "the rarest cases" in which a trustee should be deprived of "the privilege of selecting his own counsel" as stated in our opinion, supra, in the first appeal.

The referee found that the requested attorneys "do not represent any interest adverse to the trustees or this *estate*." He then finds

"1) That the employment by the trustees of Craig & Weller and their associates would leave this Court and this estate open to the charge, *even if it were unwarranted,* that the said attorneys were influenced in the discharge of their duties and responsibilities, to the advantage or benefit of the bankrupt corporation or its president and

dominating personality, Mr. Bell, by something which occurred at the time of the appointment of the trustees in this case.

"2) That such charge, if made, *even though it proved to be without foundation,* would bring into question the fair and impartial administration of this estate and would cast a doubt upon the integrity of this Court." (Emphasis suplied.)

It is a novel ground for refusing to decide an issue on the evidence adduced because of an *"unwarranted"* charge that the chosen attorneys, found to represent no "interest adverse to the trustees or this estate" cannot act for the best interest of the estate. Contrary to the referee's statement, a refusal so to decide on the facts "would bring into question the fair and impartial administration of this estate and would cast a doubt on the [mental] integrity of the court." It is the best interest of the *estate* with which Order 44 is concerned, not the protection of the court against unfounded rumors and unwarranted charges.

The unfounded suspicion that the disinterested attorneys were adversely interested and hence it was not to the best interest of the estate to appoint them is based upon the fact that one Bell, the manager of the bankrupt, a non-profit corporation, has sought and procured the order in the instant proceeding that it was bankrupt; that he had advised the 600-odd members associated with him to place their claims in the hands of a Los Angeles Board of Trade, a body long serving creditors in insolvency and bankruptcy proceedings; that the requested attorneys had represented the Board in other bankruptcy matters; that the Board of Trade solicited creditors to make it their representative and that the claims represented by the Board were voted for the present trustees by these attorneys. The referee found that even though it was "without the knowledge" of the attorneys or of the Board that Bell had advised his 600 associates in the corporation to seek representation by the Board and even though the attorneys were found now to have no adverse interest, nevertheless "there was a *connection* between * * * them and the bankrupt corporation."

The word "connection" seems strained and of no rational import on the question here of the disinterestedness of the attorneys chosen by the trustees and of the interest of the estate in being served by such attorneys. We hold that the finding of the character of the estate as needing several attorneys chosen by the trustees and of their disinterestedness requires the granting of the trustees' petition.

The order of the district court here appealed from is reversed and that court ordered to enter an order granting the trustees' petition of January 11, 1946.